at all? Yes. Mr. Quinn on Zoom. And Mr. Torrey right here. All right, Mr. Quinn, you're reserved two minutes for rebuttal. You can begin whenever you're ready. Good morning, Your Honors, and please support Robert Quinn on behalf of the city defendants appellants, City of Buffalo, Joseph Aquino, and Mr. Tedesco. I'll start with the jurisdictional question first. This court has jurisdiction to hear this appeal because the city has limited its appeal to the question of qualified immunity. Under Cowan v. Breen, among other cases, this court, when a lower court decides a motion for qualified immunity, the appellate court, the Second Circuit, has jurisdiction to decide that so long as the appellant is proceeding on the facts in the light most favorable to the non-moving party or under their facts. That is explicitly what the appellant is doing here. We certainly, at trial, will have a much different argument than what we are advancing here. Mr. Quinn, I just want to interrupt you for a minute and ask you to address the cross-appeal because I think, before you get to the qualified immunity argument, I'm very confused. You argue that we should not consider whether or not the district court erred in holding that there was no individual capacity claim against the two officers. But if we don't address that, I don't understand what claim your qualified immunity argument would relate to in the complaint. What claim are you asserting that the district court erred in its qualified immunity determination? No, and that is a good point, Your Honor. Essentially, we are going based on what the court decided. The lower court found that there were questions of fact in denying qualified immunity. That's a specific section in their decision. In the section pertaining to punitive damages, the court did go on to state that for the purposes of punitive damages and in the complaint as the court read it, there were not individual capacity claims pledged. And as we put in our reply papers, if that is in fact the case, Your Honor is correct that there are no claims that qualified immunity would apply to. The court decided it, so we took our appeal. But essentially, if... I know, but that can't be correct, right? That can't be correct that they did not assert individual capacity claims. They put it in the caption, the first cause of action, names in the bold, the two officers as individuals. And I look back at the papers below, you were always operating on the assumption, you could correct me if I'm wrong, that this was a suit against both the city and the officers in their individual capacity. And that's why you asserted qualified immunity. Otherwise, you wouldn't have even asserted it if it was only official capacity, right? The court relied on paragraph 13 of the complaint. And if you read that paragraph, the plaintiff does not state, as many do, that those officers are being sued in their individual capacity. No, but it states that in the caption. And in that paragraph, the reason the district court concluded it was official capacity was because they used the phrase under color of law. But you know that even when you're suing somebody in their individual capacity, it still is under color of law. We've said this a million times. Officers get sued all of the time in their individual capacity, even though they're operating in their uniform under color of law, correct? That can be correct, yes. And obviously, I can't argue with the caption. The caption says what it says. And Your Honor is correct in that we did move to the extent that there was any ambiguity or otherwise. We did move for some redundant on qualified immunity in the individual capacity claims. That's what we appealed from to the extent that they exist. All right. All right. I don't want to take all your time up on that, but it's kind of an important issue. It's an important issue. You know, as I see it, there are sort of two options to proceed. If plaintiff gets what they want, then they don't have a claim. Their complaint would be dismissed in its entirety because the district court did grant the city's motion as to Monell liability, and that would apply as to the official capacity. So that's one option. The complaint gets dismissed in its entirety, and the plaintiff has no more claims. To the extent that this court does not want to do that and finds, whether it be because the issues are inextricably intertwined or otherwise, that it is warranted to address the qualified immunity. That is what our appeal is based on. And I will say, Your Honor, I do believe that this court can address the qualified immunity sort of regardless of whether or not they get to the issue of individual capacity. I think that is an issue that can be decided based on the record before that court is decided. All right. On the qualified immunity issue, let me try to frame what my concern is. You would agree under the law that there has to be a significant threat to another officer or to a third party in order to use lethal force, right? Agreed? It says, or, under Tennessee Code, it says, or, it says a person has a weapon, or. So proceeding largely under the argument that they are and were, in fact, a threat to the officers and officers. So here it would be based upon, you can correct me if I'm wrong, that Mr. Rossi had shot Officer Aquino. That would be the basis for concluding, putting aside the issue of whether or not he tried to run somebody over for a minute. But that would be the basis for using lethal force. Yes or no? Not for the purposes of this appeal. At trial, we presumably will argue that. But for the purposes of this appeal, we are assuming that the plaintiff did not have a gun. And so we do a separate analysis, and you can do multiple analyses here. We argue that even assuming for the purposes of this appeal that the plaintiff did not have a gun, that the officer was not shot, you still have an individual who is a threat, a serious threat. Not only a threat, but an actual person who did a serious injury as to the officer and the use of the car. And he did it at a cost, but hadn't that dissipated? What was the actual threat when he was fleeing the scene? Well, I'll first say, Your Honor, there does not have to be the officer facing an actual threat at the time. The officer doesn't have to wait to have his life be in danger. He's got to have a reasonable belief that the defendant's a threat. To himself or others? Right. To himself or others. And at this point, there'd been a struggle. No car was involved at this stage, so it's not a question of vehicles hitting other vehicles or dangers from vehicles. According to the plaintiff, he was just running away, and my understanding is that there had been a struggle on the ground for several minutes, and Tedesco was involved in that. Maybe he started out with that, and then, because of his own injuries, backed off. And then Rossi got up and started running. And he was running away from an officer, and how could the officer have a reasonable belief that he was going to be a threat to either other officers or other people under those circumstances? Your Honor, respectfully, because of everything that he just witnessed and was a part of. That, the plaintiff wants to… But it was all in the past, and we're not taking into account every position that the officers are taking. They're taking different positions. We're taking the plaintiff's view. And under those circumstances, everything that you… And the briefs were interesting because they tried to tie in all the violence that occurred prior to the fleeing to somehow creating a cause in the future after he started fleeing. But none of that's relevant, as I see it. The only thing that's relevant is, does he have a gun? You're taking a position that he doesn't have a gun because that's what the plaintiff's position is. And that he was just running away. And also, so that's, you know, that's essentially it. I mean, at that time, Aquino, who was upset, and I don't know whether he knew how he'd been injured or not, but he was telling Tedesco to shoot him. But that obviously doesn't have any bearing on whether he reasonably believed what Tedesco reasonably believed. In other words, what did the district court get wrong here? The district court got wrong first. There's a lot there, Your Honor, so to answer that last question… Tell me what the district court did wrong, or I apologize for it. No, no, no. I apologize. The district court got wrong finding that there were material issues of fact. That's the probable cause and the cause of the officer's injury. So that was the basis for the district court's decision. We do not believe that those are material for the purposes of the arguments that we laid out. Sort of the broader picture that Your Honor is making. What the case law says is not that a person has to have a gun. It doesn't say that a person has to be pointing a gun at someone. It doesn't say that a person has to be threatening to point a gun at another. What the actual law says is that a suspect poses a threat of serious physical harm either to the officers or others. It is not constitutionally unreasonable to prevent escape by using deadly force. So preventing escape is the key term there. And I think what the case law does say is that the officer is entitled to look at everything that has come before them. And to determine… But if he didn't have a gun, let's… If Officer Jesko didn't reasonably believe he had a gun, right? We're assuming he didn't have a gun, but it also… He could have a reasonable belief that he had a gun. But assuming he did not have a reasonable belief that he had a gun, you're not arguing to us that he could shoot an unarmed man running away based upon what had transpired, right? There's no case law that suggests that if he didn't shoot Officer Aquino and they didn't believe he had a gun, that he could shoot him just for running? No, that's what the broad Tennessee versus Conrad Lewis type of cases say. So it's critical that they reasonably believe that he had shot the officer. That has to be material, right? If he didn't have a gun, it's over for you, right? If they didn't reasonably believe he had a gun, if they didn't reasonably believe… You wouldn't find another gun somewhere? No, no, I… You wouldn't go strangle somebody? No, absolutely. And I'll address both of those issues. We are assuming for the purposes of this appeal that there was no gun. So we have to assume that that is true. Are you assuming that they didn't reasonably believe he had a gun? We can assume that as well. Okay. And the other facts that we align. So remember, we have to look at this from an objective perspective of what the officer was seeing at the time. Assuming that he didn't have a gun, we still have an officer who observed a vehicle with a police officer halfway in it, almost run over a 10-year-old, and then run into a building. Now… That's the affidavit from the defendants. But… That's unrefuted, Your Honor. There's no one saying that did not happen, including the independent witnesses. And to that point, I want to… Okay, so we're going to use the independent witnesses. We're going to use the independent witnesses, but not the plaintiffs. Is that what you're saying? Well, obviously, the plaintiff is deceased, Your Honor, so you do look to those other things. This is not an unwitnessed accident, so you are not just relying on the self-serving, arguably or allegedly self-serving. Even so, where, after he stopped fighting with Tedesco or the fighting stopped, he broke away and he ran, at that point, where was the threat to officers or others? So here's where the qualified immunity, I think, comes in, Your Honor. I think this is the analysis that we need to have, and I think, Judge, you did a good job of sort of presenting that question. And what I would say is that under the existing law, if I'm an officer reading that law, I see all of these cases that are talking about an individual who has given themselves up, who has surrendered, and that is not the case here. You have to look at the pattern and what has happened and what the officers have viewed. You have the incident with the vehicle. You have an individual who was actually hurt. The officer almost got his ear torn off, and there's photo to that effect. No one's disputing that. You have an individual, a child, 10 years old, who was almost hit by the vehicle. You have all kinds of property damage. You have a house that was struck that has five people in it, including three children. Immediately after that, there's not a delay, there's not a chase, there's not anything else. Immediately after that, the suspect, the decedent, leaves the vehicle and a physical struggle ensues where it is clear under any testimony, under any account that is in the record, that that struggle continues and that that individual is actively resisting arrest. Plaintiff wants to describe it in a certain way. He said pistol whip. He says otherwise. A lot of this is on video. And during that struggle, which it is unrefuted that the decedent is not complying, he is not giving up, he is not stopping. He is continuing to resist. So you have an officer who's just seen one of his fellow officers' ear almost get torn off, another individual almost get struck, and a vehicle on a bush in a house. He then sees that individual get out of that car and engages in a physical struggle with them. He tries to get him to stop. He doesn't immediately start shooting. He tries to get him to stop. This is all a continuous, evolving situation that the officer is attempting to deal with. During that struggle, he says, and there's no question about this because it's on video, he says get down or something to that effect. It is clear that that happens. And then that, the officer loses control, and the plaintiff then leaves. He tries to escape. And at that point, he doesn't give up. He doesn't say I'm stopping. He doesn't say forget everything that I've already just done, nor is the officer required to forget everything that has just happened. He has all of that in front of him as he then runs away. And the officer, given all of that, is constitutionally allowed to use deadly force to prevent that. Because why? Just finish this sentence for me. Because he poses a significant threat to whom at that point? If he has no gun and he has no car, how is he going to hurt somebody as he's running away from the sea? Any number of ways, and it's not up to the officer to take that risk. I don't think that's what the case law says. No, the officer has to have a reasonable belief. And where is the reasonable belief that he's going to be hurting officers or others? Well, if you want to get motion, I didn't. Let me just say, if he had pulled his own gun and shot the guy while the guy was wrestling with him and maybe trying to choke him or threatening the officer, that's a different fact situation. But that had dissipated. That had dissipated. This guy was just running away, and he shot him in the back, shot him from behind. To prevent escape, which is what he's allowed to do. And I think the characterization—  Every time there's a scuffle with an officer, no matter what, and then the officer— and then the defendant changes his mind instead of scuffling with the officer and decides to run away, then at that point the officer is free to pull a gun out and shoot him in the back? That's not the law. The Constitution doesn't draw those bright lines under that fact, putting aside all of the other facts. What would you say about that fact, that hypothetical that I gave? If it's just that, then you have Tennessee v. Garner, and that's not allowed. You have to look to—look at the three factors, Your Honor. This is what the Constitution, this is what O'Connor says. You look at three factors in determining the reasonableness. And first is the severity of the crime. Here you have a crime, and this is outlined in the attorney general's opinion, that the individual caused a serious injury to this police officer by using a motor vehicle. So that is a serious crime that just occurred. You look at the immediacy of the threat to safety. This is not—for instance, the case of Benavent, I think it's pronounced for something to that effect, where you have an isolated incident on a highway. This is in a residential neighborhood where an individual has already demonstrated, and this is what the officers are allowed to perceive and use their expertise in determining, an individual who has demonstrated an unwillingness to be taken into custody and essentially a willingness to do anything to prevent that. This isn't necessarily relevant, but I think it proves a point. Gino Fresco, who's a witness there, says if he had just given up, none of this would have happened. That witness also said that he never heard him say that he has a gun, which is not a dispute. But anyway, okay. You have your two minutes at the bottom. Let's hear from your adversary, Mr. Torrey. Yes. Good morning, ma'am. Please support Elton Torrey on behalf of the plaintiff at L.E. I will start by saying, as a jurisdictional matter, we have the same problem, and that is the city has never accepted the proof and the facts from photographs and videotapes and eight witnesses and 13 depositions about which the plaintiff brought the complaint. Even now in discussing this appeal, the city is relying on its own version of the facts. Judge Stratney was correct. The city did the same thing in the lower court, and Judge Stratney's decision in order rejected it. He pointed out the city's wrong. The facts are widely disparate. Now, the plaintiff's version of facts based on the proof, just to be clear, is that these two defendants individually were committing crimes under the cover of law while in a blue uniform. Both of these officers had prior experience with Jose Brasi. Aquino particularly was involved in a chase three years earlier that covered many miles, issued 13 citations, then went to court, and in court all of those charges were dismissed. A month before that, in February of 2014, Tedesco had pulled Brasi over for the same thing. So they knew him. They knew him when they spotted him at 15 feet away at the intersection. They followed him for two blocks. They cut him off through the police handbook out the window because they knew that they were going to cut this individual off. They were up to no good from the beginning. That's why they were operating in radio silence. That's why they were operating under cover. That gets to the question about the probable cause to pull him over. That's all you're talking about. What we're talking about is a very narrow issue. At what point, you know, what was the officer's reasonable belief when Tedesco's reasonable belief when he shot him in the back in terms of whether he was a threat to others or a threat to the police? My point is that because of the facts of the case, the defendants individually cannot be entitled to qualified immunity. There's a widely disparate version of the facts. I understand that. And so in that instance, there's no view from the plaintiff that my client's son caused that injury to Aquino. They cut him off. Aquino dove in a car and hit his right ear on the doorframe of the car. That's why all the DNA from his blood is all over the doorframe on the right edge. Once he dove in and landed on the man's lap, the car took off and went 50 feet across the intersection and crashed. Then he was subjected to a prolonged beating at the hands of two of these. That's when the videotape from the cell phone camera starts. You can see Tedesco pistol-whipping him to the ground after he rips his clothes off his upper body. You can see the man is unarmed. His hands are empty. He's naked from the waist up. The beating continues from the car into the yard to the bushes out into the street. On camera, there's still photographs in the record that are replete. Aquino backs across the street 10 feet. He's watching this. He never goes for his own life. Meanwhile, the case of Obert is very instructive because it states, and it is imperative to understand, that these officers claimed after the fact they thought Aquino was shot or that Rossi was armed. They accept now that there was no reason to believe. But the fact is, neither of these two defendants acted or behaved as if they believed that Aquino had been injured by a gunshot to his head in that car where it traveled across the intersection and crashed into the house. They both would have pulled their guns in the car and killed him in the car and crashed against the house. No, the witness in the house saw them beating and punching him in the head in his face. What's the point of all this discussion? I mean, I understand that, which you'll be talking to a jury. We're not a jury. We're focusing on a very narrow legal issue as to whether the officers had a reasonable belief that he was a threat to the other officer, other officers, or the public when the trigger was pulled. So let's go to the fact that Tedesco's pulling the trigger, shooting him. At that point, what's your argument? Exactly what Your Honor referenced before. The man is naked from the waist up. Tedesco doesn't have any reasonable belief he knows for a fact this man is unarmed because he's got eyes in his head and it's seen on videotapes that he's unarmed and unbehaving. Now, after he clubs him to the ground, the man starts to run. He's a block away. Aquino's now ordering his partner to shoot him according to the same witness in the house that saw these two cops beating the guy up in the car. Tedesco takes a knee and fires at his back three times. He knew he was unarmed from his own senses and his own struggle over two or three minutes with the man. His argument, as you heard, it's sufficient even if he knew he was unarmed. This is the argument. He's assuming he was unarmed and they had no reason to believe he was armed. He said he's assuming that. You heard him. His argument is that because he almost ran over a child and injured his fellow officer, he saw the injury to the ear, that that was a sufficient basis to use lethal force. That's what this comes down to. That's not the law most respectfully, Your Honor. Under Obert and Razman decided in this circuit under Tennessee v. Gardner. But secondly, most importantly, Mr. Quinn goes back to their rendition of the facts. If you look at the state police investigation report, that 10-year-old on the bike was never in that line of travel that the news photographer caught. When he pictured that car before the defendants all took a seat, the child took the investigators to the location, and it was on the yard field side of the corner house where the cop crashed into. So the young man took the two investigators to a point between two trees. The record contains that report and showed them where he was. He was not almost struck. That's the city's version of facts, which is refuted by the state police report. You can see those two trees in the photographs seen, and it is not on the heart inside of that intersection. So he was never in danger. That was brought up with all the other things that the defendants said in the aftermath of what they did. And similar to the fact that Tedesco gets on the radio, finally breaking radio silence, and says, My gun's in the car with the facts about it, all after the fact, pretending and fabricating that that was so, because he knew he shot another man in the back. Counsel, can I ask you a couple of just specific and narrow questions? One is, one of the disputed facts that was identified by the district court was whether the police had probable cause to pull him over in the first place. And I'm curious as to whether that matters once they do pull him over. What's the significance of whether they had probable cause to pull him over as it relates to the excessive force claim? Part of that is that I took that finding by Judge Streck to mean probable cause to believe that he was an imminent moral threat to someone. At the moment, he was shot in the back from about 120 feet away, running away from the police. So that's the standard. Okay, all right. I have your answer there. The other question that I'm struggling with is, in the context of the punitive damages ruling, which would only be before us if it was sort of intertwined inextricably with the qualified immunity, the court makes this assertion that you've only sued the municipal employees in their official capacity. Is that an accurate understanding? Do you understand that you're suing them in their official capacity? No, that's not the case, and we're back a little bit to the beginning of this argument today. One, the simple fact is that the complaint reflects they were sued individually. Paragraph 3 even says that in black and white of the complaint at Doctrine 1. And secondly, the addendum clause included a claim for punitive damages, knowing that these two defendants were sued personally and individually, not just as municipal representatives. And the course of the litigation, this was all about the conduct of these two defendants that ultimately culminated in this 26-year-old being shot in the back after being beaten by them for about three or four minutes. And then at the end of the whole thing, defendant Aquino turns up with a sizable quantity of cocaine hidden under his vest that he had taken from Rossi. That was their motive. That was their intent from the start, according to the evidence. I will say this. The individual liability is inextricably intertwined with this qualified immunity that the city intends to raise for the reasons that Judge Bianco mentioned. There's no qualified immunity for municipalities or municipal defendants. So the city really needs this court to grant my cross-appeal to state that this was sued against these two main defendants individually as persons that did something wrong. All right. All right. Thank you, Mr. Quinn. Just one word on the punitives. From that clause, the punitive damages, because that's for a jury. There's no substantive ruling below that. Well, the only basis on the punitive damage is the district court. We could, if we sent it back saying there was individual claims, the district court could certainly reassess that ruling, right? We don't have to address that directly. I would say so. There's no substantive ruling on whether this would amount to the type of malevolent conduct that would support punitive damage in the jury's eyes. All right. Thank you. Mr. Quinn, you have two minutes in rebuttal. Respectfully, that plaintiff's argument does not address the substantive issue before this court, which Your Honor accurately described as a narrow issue. And a narrow issue in the context of a qualified immunity case is one that needs to be put beyond the shadow of the doubt. There needs to be a case on point. The plaintiff's argument should have been here is the case and here are the facts which establish that this was not justified or at least arguably justified or objectively reasonable or arguably reasonable under the circumstances. That is the analysis that is required in the context of a qualified immunity case. That is not what the plaintiff did. The plaintiff has reiterated and again attempted to create these sort of other issues which are not addressing the substantive arguments that the city defendants are making. The question is, as Your Honors have pointed out, does the officer have to forget everything that he has just seen? All of that information, all of that threat, all of that actual injury, including a physical struggle where someone has indicated that they are not going to stop. And then that person runs away. Is the officer required to stop and just walk away and not do anything further? Or given that the case law talks extensively about whether or not the individual has given up, whether or not that individual has surrendered, whether or not that individual has indicated an affirmatively to that officer that they are not going to continue in that threat. Under the case law, what is required? And we respectfully submit that given this context, that there is no case on point. That this case is aligned with the use of force arguments in the context of the police chase cases and that the plaintiff has offered no evidence to the contrary. Under the facts in the light most favorable to them, the city defendants are entitled to judgment as a matter of law. Assuming the court does address the issues of the individual capacity claims, the court should dismiss the complaint on the grounds of qualified immunity given the Monell findings. All right. Thank you both. We'll reserve decision. Have a good day.